UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANIEL C. PORTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:04-CV-768 RM |
| | ) |
| DR. JOHN VANNATTA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

<u>OPINION AND ORDER</u>

Daniel Portee, a prisoner confined at the Miami Correctional Facility ("MCF"), submitted a complaint under 42 U.S.C. § 1983 alleging that Indiana Department of Correction ("IDOC") officials violated his federally protected rights. The court must review the merits of a prisoner complaint seeking redress from a governmental entity or officer or employee of a governmental entity, and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard under § 1915A as when addressing a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint. <u>Weiss v. Colley</u>, 230 F.3d 1027, 1029 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
> In order to state a cause of action under 42 U.S.C.§ 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in

> a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Portee brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress violation of federally secured rights by a person acting under color of state law. Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. West v. Atkins, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 140 (1979).

Mr. Portee's complaint contains seventeen of causes of action. The first three causes of action allege that MCF official failed to provide him with a diagnostic test he alleges might have been helpful in diagnosing his medical problems.

In his first cause of action, Mr. Portee alleges that he complained of lower back pain and Dr. Ericsson sent him to the Wishard Hospital for a MRI. A Wishard doctor diagnosed Mr. Portee with "probable epidural AVF in the ventral soft tissue . . .. This may or may not be related to the plaintiff's back pain. Spinal aniography may be helpful in evaluating this finding." (Complaint at p. 4). Mr.

2

Portee alleges that Dr. Ericsson told him he would write an order for a spinal aniography, but failed to follow through, causing "a two (2) year delay of him receiving necessary medical treatment." (Complaint at p. 8). In his second cause of action, Mr. Portee alleges that MCF Health Care Administrator Chad Barr and Dr. Ericsson "dropped the outside medical appointment that plaintiff was in need of." (Complaint at p. 10). In his third cause of action, Mr. Portee alleges that MCF Superintendent John VanNatta reviewed the grievances he filed concerning his subordinates' failure to provide him with a spinal angiography and that Supt. VanNatta's refusal "to conduct an investigation of the plaintiff's claims against the medical department . . . constituted deliberate indifference to [his] serious medical needs." (Complaint at pp 11-12).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Because deliberate indifference is comparable to criminal recklessness, Farmer v. Brennan, 511 U.S. at 837, a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. Estelle v. Gamble, 429 U.S. at 105-107; Gil v. Reed, 381 F.3d 649, 664

3

(7th Cir. 2004). He must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). "Regardless whether the defendants intended harm, they need only have known of a substantial risk to inmate safety that they easily could have prevented but did not." Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004).

A prisoner is not entitled to the best care possible, s*ee* Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997), and the failure "to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle v. Gamble, 429 U.S. at 108. As Mr. Portee suggests, a spinal aniography may have been a "helpful" diagnostic test in evaluating whether the Wishard doctor's findings were accurate. But Dr. Ericsson and Mr. Barr's failure to ensure Mr. Portee received this diagnostic test and defendants Supt. VanNatta's failure to conduct an independent investigation of his claims against the medical department state no Eighth Amendment claim.

In his fourth cause of action, Mr. Portee alleges that Dr. Ericsson "issued a medical pass for a bottom bunk, bottom range cane and elevator pass." (Complaint at p. 12). He states that correctional officers wrote him up for assault using the cane and that based on this information, Dr. Ericsson discontinued the cane and elevator pass. The conduct adjustment board found Mr. Portee innocent of the charges against him and Mr. Portee says he notified Dr.Ericsson that the disciplinary board found him not guilty. On September 16, 2003, Dr. Ericsson saw Mr. Portee and renewed the medical pass for his cane but not his elevator pass.

4

Mr. Portee alleges that Dr. Ericsson's failure to reissue the medical pass for his cane before September 16 constituted deliberate indifference to his serious medical needs. That Dr. Ericsson did not restore Mr. Portee's cane until after the prison disciplinary board determined that he had not used it as a weapon states no claim upon which relief can be granted.

Causes of action five through eight deal with dental problems. In cause of action five, Mr. Portee alleges that on July 16, 2003, "a filling came out of his tooth leaving a very large hole." (Complaint at p. 14). He submitted a request for health care and was told an appointment was being made for him. Mr. Portee complained several times that the hole in his tooth was causing him severe pain. The dental department responded that his appointment was for August 12 and that he could not be seen until then. On August 5, however, Dr. Ward saw Mr. Portee and pulled his tooth because the hole was too big to be filled.

Mr. Portee alleges that Dr. Ward's "failure to screen [him] after he requested emergency dental care" subjected him to unnecessary pain. (Complaint at p. 17). But Mr. Portee's complaint establishes that Dr. Ward, or whoever was responsible for scheduling dental visits, brought him in a week before his scheduled appointment, establishing a lack of deliberate indifference to his condition.

In cause of action six, Mr. Portee alleges that Dr. Ward told Mr. Portee he needed partial plates but didn't prescribe them. Mr. Portee says he saw Dr. Ward in the hall on February 26, 2004, and asked him "about the order for his partials, and Defendant Ward informed him that the order had been denied" by another official. (Complaint at p. 20). Later, Dr. Ward told him that "IDOC Policy would not allow him to make plaintiff's partials" (Complaint at p. 20).

5

The complaint establishes that Dr. Ward prescribed partials for Mr. Portee, but that another IDOC official cancelled the order. This cannot constitute deliberate indifference on Dr. Ward's part.

In cause of action seven, Mr. Portee alleges that Mr. Barr was the official who countermanded Dr. Ward's prescription for partials. Eighth Amendment principles prohibit prison officials "from intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Gil v. Reed, 381 F.3d at 649. "Fed. R. Civ. P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998). If Dr. Ward diagnosed Mr. Portee as having a serious medical need for partial plates and Mr. Barr cancelled Dr. Ward's prescription for partials because of its cost or some other nonmedical reason, then giving Mr. Portee the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say no relief could be granted under any set of facts that could be proved consistent with his Eighth Amendment deliberate indifference claims against Mr. Barr.

In his seventh cause of action, Mr. Portee also alleges that after he filed a grievance against Mr. Barr for denying his partials, Mr. Barr threatened him "and attempted to intimidate the plaintiff because he had filed grievances against the medical and dental offices." (Complaint at p. 28). Mr. Portee alleges that Mr. Barr threatened to retaliate against him, but does not allege that he ever followed through on his threats. There is "a *de minimis* level of imposition with which the Constitution is not concerned," Ingraham v. Wright, 430 U.S. 651, 674 (1977),

6

and verbal abuse and harassment are not sufficient to state a claim under § 1983. Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987); Oltarzewksi v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

In cause of action eight, Mr. Portee alleges that he complained to Assistant Superintendent Sally Stevenson about Mr. Barr's actions but that she did not respond and "refused to conduct an investigation, or to intervene and correct the problem." (Complaint at p. 30). Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993). Assistant Superintendent Stevenson's failure to conduct an independent investigation on his grievance states no claim against her.

In causes of action nine, ten, and eleven, Mr. Portee alleges that Correctional Lieutenant Reggle and Sergeants Todd and Pretorious conspired to fabricate a false conduct report against him for waving his cane in the air and threatening to use it as a weapon. The Conduct Adjustment Board found Mr. Portee not guilty when the video surveillance tape established his innocence. Mr. Portee asserts that the defendants said, in his presence, that they "had been able to get one of the facility's physicians to [discontinue] plaintiff's walker by providing false information," (Complaint at p. 30), and Sgt. Todd then stated "we need to see what we can do about getting his cane (discontinued) too." Giving Mr. Portee the

7

benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say no relief could be granted against defendants Todd, Reggle, and Pretorious under any set of facts that could be proved consistent with claims presented in counts nine and eleven of his complaint.

In his tenth cause of action, Mr. Portee alleges that defendant Reggle "failed to follow IDOC Policy and Procedures as it relates to the allegations in the disciplinary report by Sgt. Todd," (Complaint at p. 33), and that his actions violated the Fourteenth Amendment's equal protection clause. (Complaint at p. 34). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. at 140. Mr. Portee's suggestion that Officer Reggle didn't follow departmental policy and procedures states no claim upon which relief can be granted under § 1983, and nothing in the complaint suggests that Officer Reggle's failure to follow IDOC policy and procedure violated the Fourteenth Amendment's equal protection clause.

In cause of action twelve, Mr. Portee alleges that Supt. VanNatta placed him in the Post Disciplinary Segregation and Forced Idle Unit, an administrative segregation unit, in which he is confined in his cell 22 or 23 three hours a day without outside recreation. He asserts that "the actions of Defendant VanNatta in refusing the plaintiff outdoor recreation and exercise . . . constitutes cruel and unusual punishment." (Complaint at p. 37).

Subject only to Eighth amendment restrictions, "a state can confine a prisoner as closely as it wants, in solitary confinement if it wants." Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir. 1991). Lack of outdoor recreation states no

8

federal constitutional claim on which relief can be granted. Harris v. Fleming, 839 F.2d 1232 (7th Cir. 1988). (summary judgment affirmed on a denial of exercise claim where the plaintiff was afforded indoor exercise, but no outdoor exercise). "[Plaintiff] claims only to have been deprived of yard or recreation time, not all exercise. In modern prisons the denial of recreation time may deprive inmates of many desirable, entertaining diversions the lack of which would not raise a constitutional issue." *Id.* at 1236.

In cause of action thirteen, Mr. Portee alleges that on April 26, 2004, MCF law librarian Barbara Kasper wrote a memorandum listing several prisoners, including Mr. Portee, who had between them made 80,000 free legal copies in a three-month period. He suggests that this memorandum was "retaliatory in nature." (Complaint at p. 46). That a prison official might notify superiors of potential abuse of free copying states no claim of retaliation. Mr. Portee also asserts that the Ms. Kasper's memorandum violated IDOC policy 00-01-102, but a violation of Indiana Department of Correction policy states no claim upon which relief can be granted under § 1983.

Mr. Portee also alleges in his thirteenth cause of action that he obtained a copy of the memorandum dealing with prolific photocopiers and complained about it. He alleges that in retaliation for his complaints, Ms. Kasper began writing false conduct reports against him for disruptive conduct each time he attempted to obtain copies of legal materials, and that she denied him access to the law library. To establish a retaliation claim, Mr. Portee must establish first that he engaged in a constitutionally protected activity, and second that engaging in that activity

9

was a substantial or motivating fact in the defendant's actions against him. Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977); Brookings v. Kolb, 990 F.2d 308, 315 (7th Cir. 1993).

Retaliation against a prisoner for filing a grievance or complaining about treatment by officials states a claim upon which relief can be granted. Sprouse v. Babcock, 870 F.2d 450 (8th Cir. 1989); Dixon v. Brown, 38 F.2d 379 (8th Cir. 1994). To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred. Geder v. Godinez, 875 F.Supp. 1334, 1338 (N.D. Ill. 1995). If the defendants establish that a legitimate reason existed for their actions and they would have taken the same actions regardless of whether the plaintiff engaged in the protected activity, then the plaintiff can prove retaliation only if he can show that the legitimate reason given for the allegedly retaliatory act is pretextual. Mt. Healthy City School District v. Doyle, 429 U.S. at 575. Giving Mr. Portee the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of set of facts consistent with the retaliation claims against Ms. Kasper.

Mr. Portee also alleges that Ms. Kasper sometimes did not allow him to come to the law library. There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 354 (1996). Prison officials need only ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Id* at 351. Prison officials violate the Constitution only if they actually deprive a prisoner of the opportunity

10

to present or prosecute a specific non-frivolous claim. *Id* at 353. Mr. Portee does not allege that lack of access to the MCF law library resulted in any actual injury to his efforts to present or prosecute a non-frivolous claim.

In cause of actions fourteen and fifteen, Mr. Portee alleges that Assistant Superintendents Chris Johnson and Sally Stevenson violated his federally protected rights by failing to train Ms. Kasper or to intervene after he complained about her actions. "Failure to train claims are usually maintained against municipalities, not against individuals." Sanville v. McCaughtry, 266 F.3d 724, 739 (7th Cir. 2001). When the defendant functions as an "arm of the state" in establishing policies and in training and disciplining his subordinates, he is "entitled to Eleventh Amendment immunity for these particular functions." Manders v. Lee, 338 F.3d 304 (11th Cir. 2003). Defendants Johnson and Stevenson are state officials, so the Eleventh Amendment precludes an action against them for damages in their official capacities. Kentucky v. Graham, 473 U.S. 159, 167 (1985); Meadows v. State of Indiana, 854 F.2d 1068, 1069 (7th Cir. 1988). Moreover, state officials, in their official capacities, are not "persons" within the meaning of § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

In his fifteenth cause of action, Mr. Portee also alleges that Assistant Superintendent Stevenson ordered a correctional officer to write a conduct report against Mr. Portee for unauthorized possession of the Kasper memorandum, violating his substantive due process. The Constitution, however, does not guarantee that prisoners will not be written up for unauthorized possession of official prison documents.

In cause of actions sixteen and seventeen, Mr. Portee alleges that on June 14, 2004, Correctional Sergeant Foth confiscated his legal papers pertaining to an upcoming hearing in Portee v. Penfold, 3:02-cv-514AS because "the amount of legal paper you have is excessive and a fire hazard." (Complaint at p. 68). Mr. Portee says he complained to Correctional Sergeant Durham, who looked into the matter and agreed with the confiscation. On June 16, before the hearing, "plaintiff was given back all the legal papers which was confiscated on the order of Sgt. Foth and Defendant Durham." (Complaint at p. 72). Mr. Portee asserts that:

> Because plaintiff had never represented himself in a trial, he became overwhelmed with the thought that his case would be dismiss[ed] because he wasn't prepared. As a result he was unable to sleep at all the night before he had to represent himself in a serious civil proceeding against trained attorneys. Due to the plaintiff's inability to get any sleep the night before his trial, he was unable to do a good job on staying aware to evidence presented by the defendants and failing to raise a timely objection. The lack of sleep damaged the plaintiff's case.

(Complaint at. p. 70.)

Mr. Portee, asserts that lack of sleep "prevented him from doing a good job with his case by raising timely objections to evidence." (Complaint at p. 72). The constitution's guarantee of access to the courts requires state actors to assure that prisoners have access to courts to present claims concerning the legality or conditions of their confinement, but state actors have no duty to assure that prisoners can litigate those claims effectively once they have been raised in court. The right to access goes no further than access.

> It must be acknowledged that several statements in Bounds went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present . . . . These statements appear to suggest that the

12

> State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-<u>Bounds</u> cases, and we now disclaim them.

<u>Lewis v. Casey</u>, 518 U.S. at 354.

Prison officials returned Mr. Portee's legal materials to him before the trial, and that he may not have been able to sleep the night before the trial preventing him from being as effective in court as he might otherwise have been states no claim upon which relief can be granted.

For the foregoing reasons, the court:

    (1) DISMISSES, pursuant to 28 U.S.C. 28 U.S.C. § 1915A(b)(1), the claims presented in causes of action one, two, three, four, five, six, eight, ten, twelve, fourteen, fifteen, sixteen, and seventeen, DISMISSES the retaliation claim presented in cause of action seven, DISMISSES all claims in cause of action thirteen except the retaliation claim, and DISMISSES defendants John VanNatta, Sally Sevenson, Chris Johnson, Dr. Ward, Dr. Ericsson, Sergeant Foth, and Sergeant Durham;

    (2) GRANTS the plaintiff leave to proceed against defendant Chad Barr in his individual capacity for damages and in his official capacity for declaratory and injunctive relief on the Eighth Amendment deliberate indifference claim presented in cause of action seven, GRANTS him leave to proceed against Lieutenant Reggle, Sergeant Todd, and Sergeant Pretorius in for damages in their individual capacities on the claims presented in causes of action nine and eleven, and GRANTS him leave to proceed against

defendant Barbara Kasper in her personal capacity for damages on the retaliation claim presented in his thirteenth cause of action;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), ORDERS that defendants Barr, Kasper, Reggle, Todd, and Pretorius respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) DIRECTS the marshals service to effect service of process on defendants Barr, Kasper, Reggle, Todd, and Pretorius on the plaintiff's behalf, and DIRECTS the clerk's office to ensure that a copy of this order is served on them along with the summons and complaint.

SO ORDERED.

ENTERED:   July 14, 2005

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court